# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANDREW JAMES SNYDER, | § § § § § § § § § § § § | |
| *Plaintiff,* | | |
| versus | | CIVIL ACTION NO. 5:13-585 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | | |
| *Defendant.* | | |

## **REPORT AND RECOMMENDATION**

Andrew James Snyder ("Snyder") seeks review of an adverse decision on his application for disability-based benefits under the Social Security Act.[1]

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). When reviewing acts of administrative agencies, courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without

---

[1] Snyder applied for disability insurance benefits available under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Disability Insurance benefits provide income to insured individuals forced into involuntary, premature retirement by reason of disability. *See* 42 U.S.C. § 423(d).

regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## I. Background

Snyder applied for disability insurance benefits alleging disability commencing May 31, 2010. (T. 95-98).[2] He alleged disability due to herniated/bulging discs; depression; severe plantar fasciitis; spinal stenosis; tinnitus; shoulder and arm numbness; neck problems; migraines; nerve leg pain; degenerative disc disease; and falls caused by back pain and migraines. (T. 112).

Snyder's claim was denied initially, after which he requested an evidentiary hearing. (T. 51, 62). The matter was assigned to administrative law judge, Marie Greener ("ALJ Greener"), who conducted that hearing. (T. 10, 28-50). Snyder attended and testified. (*Id.*).

ALJ Greener denied Snyder's application in a written decision. (T. 28-50). The Appeals Council denied Snyder's request to review. (T. 1-6). Snyder then instituted this proceeding.

## II. Commissioner's Decision [3]

ALJ Greener found that Snyder has not engaged in substantial gainful activity since the date of alleged disability onset, and that he met the insurance

---

[2] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 6).

[3] ALJ Greener utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

requirements of the Act at all relevant times. (T. 12). She found that Snyder suffers from severe impairments consisting of a "lumbar condition and plantar fasciitis," but that his alleged left shoulder problems, migraine headaches, and depression are not severe impairments. (*Id.*). She also found that Snyder's impairments reduce his residual functional capacity such that he now can perform only a full range of sedentary work. (T. 14).

Due to Snyder's reduced residual functional capacity, ALJ Greener found that he lacks physical ability to perform his past relevant work as a service technician and supply warehouseman. (T.19).[4] She further found, however, that Snyder's residual functional capacity permits him to perform alternative, available work. In this respect, ALJ Greener consulted Medical–Vocational Guidelines commonly referred to as "the grids."[5] (T. 19-20). She concluded that a finding of "not disabled" was directed by Rule 201.28. (*Id.*).

Consequently, Snyder's application was denied on the basis that his impairments do not prevent his performance of substantial gainful employment. (*Id.*).

---

[4] Snyder thus carried his burden to prove a *prima facie* case of disability. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). The burden then shifted to the Commissioner to show at Step 5 that Snyder can still perform alternative and available work. *See* 20 C.F.R. § 404.1566; *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (quoting *Berry*, 675 F.2d at 467).

[5] The Medical Vocational Guidelines are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. They "take into account a claimant's RFC, as well as [his] age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

## III. Points of Alleged Error

Snyder's brief articulates four points of error:

1. The ALJ erred at Step 2 when she found Plaintiff's depression non-severe;

2. The ALJ did not apply the appropriate legal standards in evaluating the medical opinion evidence and arriving at a residual function capacity finding;

3. The ALJ failed to apply the appropriate legal standards in assessing his credibility; and

4. The ALJ should have consulted a vocational expert where Plaintiff's nonexertional limitations were more than negligible.

(Dkt. No. 8, p. 1).

## IV. Mental Impairment

ALJ Greener declined to find Snyder's depression as a severe impairment on the following ground:

> The claimant's medically determinable mental impairment of depression does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore non-severe.

(T. 13).

*A.   Snyder's Challenge*

Snyder argues that ALJ Greener erred in declining to find his depression as a severe mental impairment. Snyder asserts that ALJ Greener supports this finding with "only her own conclusory lay opinion that depression results in no more than mild limitation in the four broad areas set out in the disability regulations for evaluating mental disorders . . . ." (Dkt. No. 8, p. 8). Snyder maintains that Snyder's depression results in more than minimal functional limitations according to each medical expert who expressed an opinion.

*B.    Governing Principles*

Existence and severity of impairments are determined at Step 2 of the sequential evaluation process (described earlier in note 3).  "Impairments" are "anatomical, physiological, or psychological abnormalities . . . demonstrable by medically acceptable clinical and laboratory techniques."  *See* 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508.  "Severe" impairments significantly limit an individual's physical or mental ability to do basic work activities.[6]  20 C.F.R. § 404.1520(c); *see also* SSR 85–28, TITLES II AND XVI: MEDICAL IMPAIRMENTS THAT ARE NOT SEVERE, 1985 WL 56856, at *3-4  (SSA 1985).

In this Circuit, a Step 2 severity inquiry serves only to "screen out *de minimis* claims."  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n. 12 (1987)).

When *mental* impairments are at issue, this severity determination (whether there is an abnormality having more than minimal effect on ability to work)  is made through application of a "special technique" set out in 20 C.F.R.

---

[6]    The Commissioner's regulation defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," examples of which include:

> (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

§ 404.1520a(b)-(e); *see also Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (describing analysis). This complex and abstruse technique, correctly identified and cited by ALJ Greener, helps administrative law judges determine at Step 2 of sequential evaluation whether claimants have medically determinable mental impairments and whether such impairments are severe.[7]

Under this technique, *functional effects* of mental impairments are factored into Step 2 severity determinations. To complete a severity assessment, this technique requires an administrative law judge to "rate the degree of functional limitation" in four areas: (1) "[a]ctivities of daily living;" (2) "social functioning;" (3) "concentration, persistence, or pace;" and (4) "episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). For the first three functional areas, an administrative judge provides a rating of either "[n]one, mild, moderate, marked, [or] extreme." *Id.*, at § 404.1520a(c)(4). For the fourth category (episodes of decompensation) an administrative judge provides a rating on a five-point scale: "[n]one, one or two, three, four or more." *Id.* Administrative law judges generally conclude that claimants' mental impairments are not severe when they receive ratings of "none" or "mild" in each of the first four areas and "none" in the fifth area. *Id.*, at § 404.1520a(d)(1); *Kohler*, 546 F.3d at 266.

---

[7] An administrative law judge "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [those] findings." 20 C.F.R. § 404.1520a(b)(1). Next, the administrative law judge must assess the degree to which the claimant's impairment functionally limits his or her "ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*, at § 404.1520a(c)(2).

The administrative law judge uses these ratings to determine the severity of the claimant's alleged mental impairment. 20 C.F.R. § 404.1520a(d). The administrative law judge generally will conclude that the claimant's mental impairment is not severe if the claimant receives a rating of "none" or "mild" in each of the first three areas and "none" in the fourth area. *Id.*, at § 404.1520a(d)(1); *Kohler*, 546 F.3d at 266.

*C. Application*

When finding Snyder's depression to be a non-severe impairment, ALJ Greener reasoned as follows:

> Because the claimant's medically determinable mental impairment causes no more than "mild" limitations in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is non-severe (20 CFR 404.1520a(d)(1)).

(T. 13). This finding is at odds with the medical record. Dr. D. Mangold, a non-examining State Agency medical review consultant,[8] reviewed Snyder's longitudinal record of mental health treatment.[9] Dr. Mangold opined that Snyder has *moderate* functional limitations with regard to social functioning and in maintaining concentration, persistence, or pace. (T. 519). In a "Mental Residual Functional Capacity Assessment" form,[10] Dr. Mangold found Snyder to be moderately limited in the following activities:

- ability to understand and remember detailed instructions;
- ability to carry out detailed instructions;
- ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;

---

[8] Dr. Mangold's professional credentials are not reflected in the record before the court. State agency medical consultants, however, are recognized experts in evaluation of medical issues in disability claims under the Act. *See* 20 C.F.R. §§ 404.1526(c), 404.1527(f)(2).

[9] Since January 1, 2009, progress notes from the Syracuse Veterans Affairs Medical Center, Behavioral Health Unit, show treatment for an adjustment disorder with mixed emotions. He was prescribed Xanax and received counseling. In July 2009, Snyder was seeking a refill of Xanax to help ease his symptoms of anxiety. (T. 324-25). In November 2009, Snyder's diagnosis was changed to Depressive Disorder, and he was taking Trazodone and Sertraline to aid sleep and/or for depression. He continues seeing a therapist monthly and "telephone therapy," as needed. (T. 12-13, 45, 235, 324-35, 504).

[10] Mental Residual Functional Capacity Assessment, Form SSA-4734-BK-SUP.

- ability to accept instructions and respond appropriately to criticism from supervisors;
- ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
- ability to respond appropriately to changes in the work setting.

(T. 529-30). Dr. Mangold also opined that Snyder is capable of performing only "simple, low stress work." (T. 521).

Dr. Dennis Noia, Ph.D., a consultative psychological examiner, diagnosed Snyder with Depressive Disorder, and assessed that Snyder can relate to and interact with others only moderately well, and noted further that Snyder has "some difficulty dealing with stress." (T. 502). Dr. Noia found Snyder capable of understanding and following only simple instructions and directions. (*Id.*).

Thus, both mental health professionals who issued opinions regarding functional effects of Snyder's depression concluded that Snyder has *moderate*, *i.e.*, more than mild or minimal functional limitations emanating therefrom. ALJ Greener mentions neither Dr. Noia's nor Dr. Mangold's opinions, but, instead, interprets raw medical data and interjects her own lay medical judgment when finding that Snyder has only *mild* limitations in the first three functional areas of the special technique protocol for evaluating severity of mental impairments. (T. 12-14).

"[I]t is well-settled that the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion." *See Balasmo v. Chater*, 142 F.3d 75, 80–81 (2d Cir. 1998) (internal citations omitted). Consequently, ALJ Greener erred at Step 2 when finding that Snyder's depression is a non-severe impairment.

D.   *Harmless Error Analysis*

Congressional mandates requiring courts to review administrative decrees in light of "the rule of prejudicial error" and to disregard all administrative errors and defects not affecting "substantial rights" refer to what modern jurisprudence calls "harmless error doctrine." *See Shinseki v. Sanders*, 556 U.S. 396, 406-08 (2009). Under this doctrine, a reviewing court must reverse and remand when an administrative law judge errs unless, as a matter of law, the result was not affected by the error. *See NLRB v. Enterprise Assoc.*, 429 U.S. 507, 522 n. 9 (1977). In other words, administrative legal error is harmless when the same result would have been reached had the error not occurred. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

Courts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. Several courts both within and outside the Second Circuit reason – mostly in *dictum* – that when an administrative law judge identifies *some* severe impairments at Step 2, and then proceeds through sequential evaluation on the basis of combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify *all* severe impairments at Step 2 is harmless. *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 n.1 (2d Cir. 2010) (noting, in *dicta*, that there was no error by ALJ in finding disc herniation non-severe because ALJ did identify other severe claims at Step 2 so that claim proceeded though the sequential evaluation process and all impairments were

considered in combination).[11] Conceptually, these cases articulate a sound legal principle. It is eminently reasonable to conclude that an error is harmless when that error is negated before a final decision. Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error.[12]

Application of this specialized test does not generate a conclusion that the Step 2 error in Snyder's case is harmless. There is no discernible basis for the court to conclude that ALJ Greener factored Snyder's depression or its functional effects into her ultimate residual functional capacity determination. (T. 14-19). As noted earlier, ALJ Greener made no mention whatsoever of Dr. Noia's and Dr. Mangold's opinions regarding Snyder's mental limitations from depression. Nor did she include any mental limitations in her articulation of Snyder's

---

[11] *See also Warren v. Astrue*, No. 10-CV-500S, 2012 WL 32971, at *4 (W.D.N.Y. Jan. 6, 2012) (despite ALJ's "lack of clarity" at step two, ALJ properly considered all the effects of all Plaintiff's impairments, making remand inappropriate); *Briggs v. Astrue*, No. 09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *4 (N.D.N.Y. Mar. 4, 2011) (when ALJ concluded that Plaintiff had an impairment considered severe under the Act. . .and continued with the sequential analysis, any arguable error in his findings. . .at step two of the analysis was harmless); *McCartney v. Commissioner of Soc. Sec.*, Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009) ("Even if. . .ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments.").

[12] It is important to note that the mere fact that sequential evaluation proceeds beyond Step 2, does not, *ipso facto*, render a Step 2 error harmless. This harmless error construct is valid only when administrative law judges faithfully execute their responsibilities to consider *functional effects* of all impairments in subsequent steps. Before a reviewing court can declare a Step 2 error harmless, it must discern something tangible on which to verify that functional effects or limitations of an impairment erroneously determined to be non-severe at Step 2 were, in fact, given consideration in subsequent steps.

residual functional capacity to account for moderate limitations observed by the mental health professionals.[13]

More general and traditional harmless-error analysis leads to the same conclusion. Evidence of moderate difficulties in maintaining pace and dealing with stress is not superfluous. It is impossible, therefore, for a reviewing court to conclude that ALJ Greener would have come to the same residual functional capacity assessment, *i.e.*, that Snyder can perform a full range of sedentary work, had she factored in his mental-impairment limitations of moderate difficulties in concentration, persistence, pace and social functioning. Similarly, a reviewing court cannot confidently conclude that ALJ Greener inevitably would or could have directly applied Rule 201.28 of the Medical-Vocational Guidelines, as opposed to eliciting expert vocational testimony or evidence from a similar authoritative source, to reach a Step 5 finding[14] that Snyder can still perform alternative and available work, and, therefore is not disabled. In absence of ability to conclude affirmatively that Snyder's application would have been decided the same way had the legal error in assessing severity of his mental impairment not occurred, a reviewing court must decide that the error affected a substantial right, and, therefore, is not harmless.

---

[13] ALJ Greener imposed no limitation that would restrict Snyder to simple, low stress work, or work not requiring production-line pace or interaction with co-workers or the public.

[14] At Step 5 of sequential evaluation, administrative law judges determine whether claimants who have demonstrated *prima facie* cases of disability can, nevertheless, perform alternative, available work. *See* 20 C.F.R. § 404.1566; *see also DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (quoting *Berry*, 675 F.2d at 467).

*E.     Denouement*

Snyder's first point of error must be sustained. ALJ Greener erred when finding Snyder's depression as a non-severe impairment. The error was not harmless. Accordingly, the Commissioner's decision must be reversed, and the matter remanded for further proceedings with respect to the mental impairment issue.

## V.  Residual Functional Capacity

Snyder's second and third points of error attack ALJ Greener's core predicate finding of residual functional capacity.[15] Snyder argues that this finding is infirm because ALJ Greener erred when assessing credibility of medical opinions and Snyder's subjective testimony. In each instance, Snyder contends that ALJ Greener failed to utilize and apply properly factors that the Commissioner has prescribed by regulation and interpretive rulings for making these credibility assessments.[16]  (Dkt. No. 8, pp. 10-12, 12-15).

Because the Commissioner's decision must be reversed and remanded due to the Step 2 error discussed above in Section V., it is unnecessary to address on their merits Snyder's points of error relating to ALJ Greener's subsequent residual functional capacity finding. From a prophylactic perspective, however,

---

[15]   "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96–8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *2 (SSA July 2, 1996).

[16]   The regulation prescribing a six-factor protocol for weighting medical opinion evidence is codified at 20 C.F.R. § 404.1527(c). The regulation prescribing a seven-factor protocol for weighting subjective testimony is codified at 20 C.F.R. § 404.1529. Additionally, an interpretive ruling directs administrative law judges to follow a two-step process to evaluate claimants' allegations of pain. SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *2 (SSA July 2, 1996).

it is appropriate to mention that ALJ Greener's weighting of medical opinion evidence sends up red flags signaling that a residual functional capacity finding of ability to perform a *full range* of sedentary work may be vulnerable and unable to withstand judicial scrutiny.[17]

First, ALJ Greener elected to give "great weight" to forensic medical opinions regarding Snyder's *physical* capacities expressed by Dr. Lisa Shirley William, M.D. and Dr. Stephen Robinson, M.D. Dr. William is a consulting internist who conducted a physical medical examination of Snyder. Dr. Robinson is Snyder's treating orthopedic surgeon. In both instances, ALJ Greener stated that she elected to give great weight to these physicians' opinions *because they were consistent with her assessed residual functional capacity for sedentary work activities*.[18] Perhaps this was just awkward articulation, but, literally, it suggests that ALJ Greener first determined Snyder's residual functional capacity and afterward chose to give great weight to medical opinions coinciding with her predetermined finding. If so, ALJ Greener put the cart before the horse. Residual functional capacity is determined *after* and *in light of* credible medical evidence, not *before*.[19]

---

[17] Addressing these additional concerns on remand may reduce the potential for a second costly and lengthy action for judicial review.

[18] With respect to Dr. William, ALJ Greener stated that "William's opinion is given great weight because it is entirely consistent with sedentary work activities." (T. 17). ALJ Greener stated that she elected to give great weight to Dr. Robinson's opinion "because it is mostly consistent with the assessed residual functional capacity." (T. 18).

[19] In an analytically-analogous context, a growing body of cases hold that it is error to measure credibility only by assessing consistency of a claimant's statements with the administrative law judge's own residual functional capacity finding, rather than evaluating all factors bearing on subjective credibility prior to deciding residual functional capacity. *See Cornell v. Astrue*, No. 7:11-CV-1064 (GTS), 2013 WL 286279, at *8 & n.4 (N.D.N.Y. Jan. 24, 2013)(collecting cases).

Second, both Dr. William and Dr. Robinson opined that Snyder's physical impairment produces postural limitations.[20] Dr. Robinson opined that Snyder should never balance, kneel, crouch, crawl or stoop, and only occasionally climb stairs. (T. 542). Dr. William opined that Snyder is moderately limited with respect to bending, lifting, prolonged standing and walking. (T. 507). Yet, despite giving great weight to their opinions, ALJ Greener imposed none of these postural limitations posited by both physicians in her residual functional capacity determination, nor did she impose manipulative or environmental limitations as opined by Dr. Robinson.[21] It is elementary that administrative law judges must consider *all impairments and their resulting limitations*, including impairments found not severe when assessing residual functional capacity. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(c); SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184 (SSA July 2, 1996).

## VI. Remaining Point of Error

Snyder's remaining point relates to ALJ Greener's use of the grids at Step 5 to find that Snyder can perform alternative and available work. This point also need not be addressed on its merits because the outcome of this case will not change whether it is sustained or rejected.

---

[20] Dr. Robinson also found manipulative limitation in that Snyder was limited in reaching in all directions, including overhead. (T. 543). Further, Dr. Robinson found environmental limitations whereby Snyder was limited by temperature extremes, vibration, humidity/wetness, hazards (machinery, heights ....), and fumes, odors, chemicals, and gases. (T. 544).

[21] To exacerbate matters, ALJ Greener also misstated Dr. Robinson's opinion that Snyder *could* sit for 6 hours in an 8-hour workday. (T. 17). In actuality, Dr. Robinson opined that Snyder could sit *less* than 6 hours in an 8-hour workday. (T. 542). Additionally, ALJ Greener misstates Dr. Robinson's opinion that Snyder *should avoid* climbing stairs, balancing, kneeling, crouching, crawling, and stooping. (T. 17). Dr. Robinson found that Snyder *should never* balance, kneel, crouch, crawl, or stoop, and, only occasionally climb stairs. (T. 542).

## VII. Recommendation

The Commissioner's decision should be REVERSED, and the case should be REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings in accordance with this recommendation.

## VIII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the  21  day of      May      2014.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge